May Term,
1860.

CLEM
v.
DURHAM.

---

## CLEM *v.* DURHAM and Others.

By §§ 15 and 16, R. S. 1843, p. 666, if issues of fact were evolved in a proceeding in chancery in the Probate Court, either party could demand a trial of them by jury as a matter of right, and the Court was bound by the verdict unless it was set aside. The language of the statute, though in form merely permissive, is in fact peremptory.

Where upon the return of the verdict in such case, a motion was made to set it aside and grant a new trial, the evidence adduced upon the trial not being before the judge, the motion was held to have been properly overruled.

If in framing an issue of fact for trial by jury, in a chancery proceeding, the plaintiff reply to the answer, he admits it to be good, and confines the inquiry to the truth of the matters at issue. Such pleadings are conducted subject to the same rules as other chancery pleadings.

*Saturday,
June 2.*

ERROR to the *Vigo* Probate Court.

WORDEN, J.—Petition, or bill in chancery, for a partition amongst his heirs, of the real estate of *George Clem*, deceased. The bill was filed by *George Durham*, and his wife *Melinda* (formerly *Melinda Clem*), against the other heirs of the deceased, and *Mary Clem*, his widow. Dower was assigned to the widow, and partition decreed. *John Clem*, one of the defendants, prosecutes his writ of error. The proceedings were concluded whilst the old Probate Court was in existence, and the record was filed in this Court in 1852. There are alleged errors and irregularities in the proceedings, in permitting the complainants to amend their bill after having taken a decree by default as against the adult defendants, the infant defendants having answered by their guardian *ad litem*, and after commissioners had been appointed to make partition, who had made their report to the Court, which report had been accepted by the Court; and in then permitting any question to be raised as to advancements. We deem it entirely unnecessary, however, to pass upon any of these questions, as there is another involved which is decisive of the whole case. The bill, as amended and finally acted upon, charges that the plaintiff in error had been advanced by his father, in his lifetime, more than his share in the estate of the deceased, by the conveyance to him of certain real estate. *John*, in his answer, denied that the land mentioned was given him by way of advancement, but alleges that he paid the full value therefor.

The question of advancement was referred to a master, who reported adversely to the plaintiff in error, but as no action was had upon the report, and as the decree which

was finally passed was not based upon it, it need not be here further noticed.

The issue thus made by the allegations in the bill of an advancement to the plaintiff in error, and his denial thereof in the answer, was submitted to a jury for trial, and a verdict returned thereupon for the defendant, *John*. As the record is somewhat confused in respect to the question submitted to the jury, we here set out the order of the Court by which the question was ordered to be submitted to a jury. The record recites that "the complainants now here move the Court that an issue at law be awarded to try the question of advancement set up in complainant's bill, and denied in the answer of *John Clem*, which issue is ordered accordingly. * * * And thereupon the said complainants allege that the said *John Clem* was advanced in manner and form as set forth in said complainants' bill, to the amount of 3,000 dollars, by, and in the lifetime of, the said *George Clem*, senior—which advancement and the amount thereof the said defendant, *John Clem*, denies; and thereupon it is ordered that the sheriff of our said county bring into Court, at the next term thereof, twelve good and lawful men of our said county to try the issue aforesaid," &c.

The record shows that the complainants afterwards filed a statement in writing of the alleged advancement, or, in the language of the record, "their issue or allegations for an issue in law." To this the plaintiff in error filed an answer setting up that the lands mentioned were conveyed to him by the deceased in consideration of 300 dollars, and of natural love and affection; and that after the death of the deceased, he fully accounted with his administrators for the full value of the lands thus conveyed to him, and paid them the residue of the full value thereof, a part thereof having been paid to the deceased in his lifetime, and that the administrators distributed the money so paid them by the said *John* among the heirs of said deceased, the present parties to this suit, who received the same with a knowledge of all the facts. The complainants replied

by way of denial, and "put themselves upon the country," and the respondents did "the like."

After the verdict was returned, the complainants moved to set it aside and grant a new trial of the issue, but the Court overruled their motion. It appears that when the issue was tried by the jury, the Hon. *A. Wilkins* was judge of the Court, and that he had gone out of office when the motion for a new trial was made. The complainants moved for a "rule" against Judge *Wilkins* that he furnish the Court now here his notes of the proceedings and evidence had before him on the trial, which was granted. The rule being served on Judge *Wilkins*, he returned that he had no minutes of the evidence and proceedings had before him on said trial, and had not sufficient recollection of the evidence to set the same out with certainty.

A bill of exceptions filed in the cause, shows that certain documents and depositions were read to the jury on the trial of the issue; but on the motion for a new trial, it did not appear "what facts were proved by parol, or otherwise, at the trial; nor had the present judge of this Court any knowledge of the evidence that was heard and understood before the jury, other than the record shows."

After the motion for a new trial was overruled, the cause was set down for a hearing, and the Court found, amongst other things, that said *John Clem* was advanced by the deceased in his lifetime, &c., and a decree was entered dividing the lands of the deceased amongst his other heirs, excepting *John*, who received nothing as heir to his father, but he received a portion as heir to a brother and sister, who died since the decease of his father.

This cause has once before been decided by this Court, but a rehearing was granted. In the former opinion of the Court, the following passage occurs:

" The Probate Court having submitted the question of advancement to a jury, and overruled the motion to set the verdict aside, had no power to pass upon the question of advancement. If that Court did not approve the verdict, it should have sustained the motion for a new trial.

Overruling that motion was an approval of the verdict; and the Court could not afterwards controvert the fact found by that verdict" (1).

The question is discussed in the briefs of counsel, whether this is a proceeding at law or in chancery; for if it be a proceeding at law, the verdict is conclusive. The law in force when these proceedings were had, provided that lands might be divided "by writ of partition at common law, or by proceedings in chancery, or in the manner provided for in this article." R. S. 1843, p. 811.

Proceedings by petition under the statute, and by bill in chancery, were so similar, that it may not always have been easy to determine their character in this respect; but we are inclined to regard this as being a chancery proceeding, as distinguished from a proceeding at law. This being the case, the question again arises whether the Court could decree against the verdict of the jury without having first set it aside. The counsel for the defendants in error, in his brief filed on the rehearing, says: "The opinion assumes the position that the verdict of the jury, unless set aside, was conclusive. I take issue with this proposition, as a question of chancery practice. I understand the rule to be well settled, that the verdict upon an issue out of chancery is not conclusive, nor need it be set aside. But the Court may proceed to render a decree upon the merits, notwithstanding a verdict to the contrary."

There are authorities, undoubtedly, to the effect that the chancellor is at liberty, if he pleases, to treat the verdict as a mere nullity, and to decide against it, or to send it back to another jury. 3 Greenl. Ev. § 261, and authorities there cited. Whether this could be done in a cause where the chancellor was not apprised what evidence was introduced upon the trial of the issue, and therefore could not determine whether the verdict was in accordance with, or contrary to the evidence thus introduced, is, perhaps, not entirely clear from the authorities. Such a course is certainly not countenanced by the remarks of the Lord Chancellor in *Bootle* v. *Blundell*, 19 Ves. 500. It was there said that "upon an issue directed, this Court reserves to itself the

review of all that passes at law; and one principle on which the motion for a new trial is made here, and not to the Court of law, is, that this Court regards the judge's report with a view to determine whether the information collected before the jury, together with that which appears upon the record in this Court, is sufficient to enable it to proceed satisfactorily," &c.

But we need not determine what was the correct chancery practice in this respect, as the question under consideration was governed by statute. The following provisions are found in the act organizing the Probate Court. R. S. 1843, p. 666:

"SEC. 15. Whenever, in any suit or proceeding pending in a Probate Court in which the parties shall make an issue or issues of fact, or in which, according to the usages and practice of Courts of chancery, it may be proper that an issue or issues of fact, or a comprehensive note and entry thereof, be made, such Probate Court shall be authorized to order such issue or entry, when so made, to be docketed for trial at the term of the Court next after the docketing thereof, unless the parties can sooner be ready for the trial thereof.

"SEC. 16. Whenever any issue is pending proper to be tried by a jury, a venire for a jury shall issue by order of the Court, or may be issued by the clerk at the request of either party having the right to have the same tried by a jury."

The question arises whether under these provisions the parties could claim a trial of the issue by a jury, as a matter of right, or whether it was discretionary with the Court. If it could be claimed as a matter of right, it follows that the Court was bound by the verdict unless it was set aside. "It is obvious," says Mr. *Greenleaf* (3 Greenl. Ev. § 262), "that this power in the chancellor to disregard the finding of the jury cannot exist in any of the *United States* where the trial of facts, in cases in equity, is secured to the parties by constitutional or statute law, as a matter of right. The law, in granting such right, where it is seasonably asserted by a party, takes away from the chancellor the

authority to determine any question, of fact material to the decision, and refers it exclusively to the jury; the judge retaining only the power to apply the law of equity to the facts found by the jury, in the same manner and to the same extent as at common law. It is only where no such right of the party is recognized by law, and where the resort to a jury is left to the discretion of the judge, in aid of his own judgment, that he is at liberty to disregard the finding of the jury, or to determine the facts for himself."

Here was an issue of fact on a question of advancement, eminently proper to be left to the determination of a jury. *Shaw* v. *Kent*, 11 Ind. R. 80. It was a case, in the language of the statute above quoted, "in which, according to the usages and practice of Courts of chancery, it may be proper that an issue or issues of fact, or a comprehensive note and entry thereof be made."

In reference to the question whether the parties could claim a trial of the issue by a jury, as a matter of right, the 266th section of the work on evidence above cited, may be quoted. The author says (having previously noticed some constitutional and statutory provisions respecting a trial by jury): "In view of these express declarations respecting the great value of the trial by jury, and of the sacredness of the right, and the care taken for its preservation, no one will deny that it is a mode of trial highly favored, and intimately connected with the general welfare. And, therefore, it may deserve to be considered whether, in those states where Courts of equity are 'authorized and empowered,' or 'permitted,' to direct issues to the jury for the trial of material facts, it be not their duty to do so, and whether the parties may not demand it of right; unless, perhaps, in those cases where the statute expressly leaves it in the discretion of the Court; it being the well known rule of law, that words of permission in a statute, if tending to promote the public benefit, or involving the rights of third persons, are always held to be compulsory. Such permission and authority to direct a trial by jury, 'if there be an issue as to matter of fact, which shall render the intervention of a jury necessary,' is found in the statute of

May Term, 1860.

CLEM
v.
DURHAM.

*Arkansas,* and is copied in nearly the same words in that of *Wisconsin.* In *Alabama,* the Courts, sitting in chancery, 'may direct an issue of fact to be tried whenever they judge it necessary.' In *Virginia,* 'any Court wherein a chancery case is pending, may direct an issue to be tried in such Court, or in any circuit, county, or corporation Court.' The precise construction of these provisions, and whether they would justify the Court in refusing to grant a trial of material facts by jury, when claimed by the parties, yet remains to be settled. Probably few judges, at the present day, in any state where the law is not perfectly clear against it, would venture to deny such an application in a case proper for a jury, nor to disregard the verdict if fairly rendered upon a legal trial. And in proportion to the duty in directing an issue to the jury, is the obligation on the judge to be governed by their verdict."

It is clear to our minds that the statutory provisions above quoted, authorizing the Probate Court "to order such issues or entry when so made, to be docketed for trial" by jury, are imperative on the Court, and confer upon the parties the right to such jury trial.

Authorities illustrating this point are abundant, and a few may be cited.

In Sedgwick on Statutory and Constitutional Law, p. 438, it is said that "this subject has been recently much considered in *England,* on the true construction of the act called the County Courts Extension Act, which declares that in certain cases 'a judge at chambers *may,* by rule or order, direct that the plaintiff shall recover his costs.' The word *may* was here held not to be discretionary, but to mean *shall,* and the Court said that when a statute confers an authority to do a judicial act in a certain case, it is imperative on those so authorized to exercise the authority, when the case arises and its exercise is duly applied for by a party interested and having a right to make the application; that the word *may* is not used to give a discretion, but to confer a power upon the Court and judges; and the exercise of such power depends not upon

the discretion of the Court or judge, but upon the proof of the particular case out of which their power arises."

In *The Mayor, &c., of New York* v. *Furze*, 3 Hill, 612, the Court say: "The inference to be deduced from the various cases on this subject, seems to be that where a public body or officer has been clothed by statute with power to do an act which concerns the public interests, or the rights of third persons, the exercise of the power may be insisted on as a duty, though the phraseology of the statute be permissive merely, and not peremptory."

So in *Witter* v. *Taylor*, 7 Ind. R. 110, it was held that a statute, providing that for certain causes the Court *may* change the venue of a cause, was imperative, and gave a party a right to such change, upon bringing himself within the requirements of the statute.

If the question were otherwise doubtful, it is rendered entirely clear by the consideration of the fact that the sections quoted providing for trials in the Probate Court, are the only ones providing for a trial in that Court by a jury either in chancery or common-law causes. The language employed has equal application to the trial of common-law and chancery causes. If the statute is not obligatory upon the Court, in reference to chancery causes, then it is not in reference to common-law causes. If, by the terms of the statute, the parties cannot claim, as a matter of right, a jury trial in the one case, they cannot in the other. So far as the point under consideration is concerned, the legislature placed the trial of common-law and chancery causes in the Probate Court upon the same ground, and it is not to be supposed that they intended, in view of the constitutional right of trial by jury in common-law causes, to leave it discretionary with the Court to grant or refuse a jury trial in such cases.

From these considerations, we think it clear that the parties were entitled, as a matter of right, to have the issue tried by a jury, and that the Court had no right to disregard the verdict unless it was set aside.

The Court below committed no error in overruling the motion for a new trial, as the evidence adduced upon the

trial was not before the judge deciding the motion, and he, of course, had not the means of knowing whether or not the verdict was sustained by the evidence. The presumption is in favor of the verdict.

But the counsel for the defendant in error says that "the verdict was rightly disregarded, if for no other reason, because of the form of the issue. Instead of denying the advancement, which would have presented a plain issue, the defendant, to obtain an advantage before the jury, undertakes to admit the advancement, and to avoid it by alleging that he had repaid the money to the administrators."

This brings us back to the point in reference to which we observed that there was some confusion in the record. By the pleadings in the cause, the advancement was properly alleged on the one side and denied on the other. The entry upon the record, of the question to be tried, which seems to be a sufficient "comprehensive note" within the meaning of the statute, sufficiently alleges the advancement on the one side, and denies it on the other, and the Court award a venire for a jury to try the question. This, it would seem, presented the question to be tried, and upon which the jury passed. But supposing the papers afterwards filed by the parties evolved the question to be tried, and which was tried, we do not see how the case is in the least changed. These papers, if regarded as a part of the record, and as presenting the issue to be tried, must be considered as any other chancery pleadings. If the complainants were dissatisfied with the answer of *John*, setting up the accounting with, and payment to the administrators of the deceased, of the value of the land, and the distribution of the money amongst the parties to the suit, they should have excepted to it, and thereby, or in some other way, tested its sufficiency. But they filed their replication denying the matter set up. In the language of this Court, in the case of *Sampson* v. *Hendricks*, 8 Blackf. 288, "the effect of the replication was to admit the plea to be good, and to confine the inquiry to the truth of the matters at issue."

We think the decree should be reversed, and the proceedings subsequent to the return of the jury set aside, and that the land should be divided between the parties according to their respective shares, allowing *John Clem* his share as heir to his father, without any deduction for any supposed advancement to him by his father.

*Per Curiam.*—The decree is reversed at the costs of the adult heirs of *George Clem*, deceased, parties hereto, other than the said *John*, and the cause remanded to the Court of Common Pleas of *Vigo* county, with instructions to proceed in accordance with this opinion.

*J. P. Usher*, for the appellant.

*S. B. Gookins*, for the appellees.

May Term,
1860.

CLEM
v.
DURHAM.

(1) This decision was rendered at the *November* term, 1857. The opinion and judgment of the Court were as follows:

STUART, J.—Petition for partition. The petition was filed by *Daniel Durham* and *Melinda*, his wife (formerly *Melinda Clem*), against the other heirs of *George Clem*, deceased, and *Mary Clem*, his widow. The dower was assigned, and partition decreed in accordance with the prayer of the petition.

*John Clem*, one of the defendants, prosecutes error.

The point of controversy is the question of advancement to *John Clem*. The record presents a sample of the imperfect character and irregularity of judicial proceedings under the old probate system.

It appears that upon the filing of the petition, process was issued and served on the defendants. On the calling of the cause, they were all, except *John Clem*, defaulted. The minors answered, however, by guardian *ad litem*, in the usual form. The Court thereupon find that the said *Mary Clem*, widow, is entitled to dower in the lands (describing them), and decree accordingly. It is further found by the Court that each of the heirs of *George Clem*, deceased, ten in number, is entitled to one-tenth part of the real estate described. In this finding by the Court, *John Clem* is named second in the order designating the heirs, and is adjudged to be entitled to one-tenth part of the realty. By a further order of the Court, three commissioners are named to make the assignment of dower and partition, according to their respective rights, and that they report, &c.

At a subsequent day, the commissioners appointed as above made their report, assigning the widow's dower by metes and bounds, and the several shares of the parties in like manner. The report appears regular and in due form, and, as the record shows, was accepted by the Court.

All this appears to have been done at the *April* term, A. D. 1847. Up to this point, there is no difficulty. But here the confusion in the proceedings commences.

The guardian *ad litem* for the minors came into Court and filed an affidavit, setting out that since his former answer, he had discovered that *John Clem* had been advanced in the lifetime of his father by the conveyance of a tract of

land, the consideration expressed in the deed being 300 dollars and natural love and affection; and that he believed the land, or some part thereof, was given by way of advancement.

The question of advancement was thereupon referred to a master, and the proceedings continued till the next term, for the report of the master.

At the next term, counsel for *Durham* moved the Court to amend the entry of the last term, so as to show that the guardian *ad litem* had leave to file an additional and amended answer for the minor heirs. And without any notice to the defendants of such motion to amend the record, without making it as a *nunc pro tunc* entry, and without any consent of *John Clem*, the record is so amended and the answer filed. The amended answer is simply an amplification of the matter contained in the answer of the guardian *ad litem*, with the additional averment that the land deeded to *John Clem* by way of advancement, was, at the time, of the value of 800 dollars.

The interlocutory decree for dower and partition was made at the *April* term, 1847. The report of the master was made, and the record amended as above, at the *June* term of the same year. That report confirms the answer, viz., that in the land conveyed to him by his father, *John Clem* received an advancement of 500 dollars, being the difference between the expressed consideration and the actual value of the land.

Upon the report of the master in chancery coming in, the defendant, *John Clem*, by counsel, moved to set aside the amended answer of the guardian *ad litem*, for causes assigned in writing, which was overruled by the Court, and the ruling excepted to.

At the *January* term, 1848, *John Clem* moved the Court that judgment be entered then (*January*, 1848), as for the *April* term, 1847, on the finding of the Court upon the rights of the parties at the latter term. This motion was also overruled and excepted to.

Thereupon the Court, of its own motion, after reciting the judicial history of the cause, proceeds thus: "It is, therefore, now ordered and adjudged that the order of this Court made at the *April* term, 1847, and the report of the commissioners made at that term, except as to the assignment of dower, be and the same is hereby set aside: and the parties are ordered to appear before this Court, at the next term, with such evidence as may be advised."

This voluntary action of the Court, in reversing its own decisions of a former term, is also made part of the record by bill of exceptions.

It is needless to follow the action of the Court through all its phases in relation to this cause.

It appears that subsequently an issue on the question of advancement was made up and submitted to a jury, and that the verdict was in favor of *John Clem*, giving a negative to the advancement. Upon the return of this verdict, no motion for a new trial of the issue was interposed. There was simply an order of continuance till the next term. At the *October* term, 1849, certain depositions were ordered to be published. *John Clem*, protesting against any further evidence on the question of advancement, moved the Court to suppress all the depositions subsequent to the verdict, which was also overruled and excepted to.

At the *July* term, 1851, some two years after the verdict in *John Clem's* favor, [the plaintiffs] moved the Court to set aside the verdict, and for a new trial on the issue of advancement, which the Court overruled. A motion was

then made by the same parties, and sustained by the Court, for a rule on the former probate judge to furnish his notes of the proceedings and evidence had before him on the former trial.

It is not proposed to follow the mazes of this record any further. From the time of the acceptance of the commissioners' report, it is one continued series of errors—excepted to at every step.

Enough has already been seen to enable the Court to reach a clear, definite and equitable result.

We regard the record as it stands, after the report of the commissioners in *April*, 1847, and the approval of that report by the Probate Court, as conclusive of the rights of the parties. Taking the whole record up to that point together, it was in substance a decree upon the merits. The proper shares of the heirs were ascertained by the finding of the Court. Commissioners were duly appointed to set off these shares by metes and bounds. This was all that was necessary to complete the interlocutory decree already passed. It was determined by the consideration of the Court in chancery form, that the heirs were entitled to one-tenth each of their father's estate. This done, the decree was completed by the return of the commissioners' report, and its approval by the Probate Court. The language used in the proceedings, taken in its grammatical connection, and with reference to the posture of the question before the Court, cannot be regarded as less than a decree of affirmance and confirmation of the partition.

If we had any doubt as to the sufficiency of the language used, the subsequent motion, in *January*, 1848, comes in aid. That motion should have been sustained, and the proper decree entered *nunc pro tunc*. On the hypothesis that a decree *pro forma* had not already been entered, *John Clem* was clearly entitled to have it done; and it was error to overrule his motion to that effect.

The equity of the case is supported very strongly by the jury, on the isolated issue of advancement.

But we lay no stress upon that. The whole proceedings, subsequent to the approval of the commissioners' report, are wholly irregular and void. The proposition that Courts cannot, upon their own motion, or at the instance of parties, change, alter, or set aside at one term, their own records and proceedings of a previous term, does not need to be argued. *West* v. *Noaks*, 6 Blackf. 335.

Had the subsequent proceedings, irregular as they were, led to any satisfactory result, there might have been some inducement to regard them with indulgence. But it is idle to attempt to make anything out of proceedings which lead only to greater confusion at every step. For instance, after the verdict of the jury and two motions for a new trial overruled, the Probate Court then takes the bill, answers, pleadings, depositions, exhibits, verdict of the jury, and affidavits into consideration, and in the face of that verdict, finds that *John Clem* was advanced by eighty acres of land, describing it. The Court then proceeds to divide, in fancy, the whole estate of *Clem*, deceased, into 880 parts, and to divide that into shares among the other nine *Clem* heirs, or their descendents, excluding *John Clem*, and actually decreed accordingly.

Two things are sufficient to vitiate these proceedings, aside from anything else.

1. The Probate Court had no power, at a subsequent term, to set aside their own proceedings of a prior term.

2. The Probate Court, having submitted the question of advancement to a jury, and overruled the motion to set that verdict aside, had no power to again pass upon the question of advancement. If that Court did not approve the verdict, it should have sustained the motion for a new trial. Overruling that motion was an approval of the verdict; and the Court could not afterwards controvert the fact found by that verdict.

In addition to all this, the motion for a new trial came too late, and the verdict of the jury became part of the record, beyond the reach of the Court, long before the motion for a new trial was made.

Altogether, it is a record which worthily commemorates the old Probate Court, now happily passed away.

In such a case, we can only do as we did in the case of *Boyd* v. *Doty*, 8 Ind. R. 370—go back through this mass of error and irregularity, to some safe starting point. In the case cited, we went back to the report of the commissioners making partition, making that the basis to correct the errors that had intervened. Here, as there, the report is sufficiently certain, because it can be made so by survey.

*Per Curiam.*—The decree is reversed, and this cause is remanded to the Common Pleas of *Vigo* county, with instructions to enter a decree confirming the report of the commissioners, made in *April*, 1847, and to make such further orders in the premises as may be necessary to perfect the partition; and that the adult heirs of *George Clem*, deceased, pay the costs, &c.