## State, ex rel. Maxwell, v. Dudley.

[No. 20,091. Filed November 20, 1903.]

Quo Warranto.—*Officers.*—*Sheriff.*—*Forfeiture of Office.*—*Lynching of Prisoner.*—*Mobs.*—*Coroner.*—Section 2065e Burns 1901 pertaining to the suppression of mob violence, providing that if a prisoner shall be taken from the sheriff and lynched it shall be conclusive evidence of failure on the part of such sheriff to do his duty and his office shall thereby be vacated, and the "coroner shall immediately succeed to and perform the duties of sheriff until the successor of such sheriff shall have been duly appointed," does not cast upon the coroner the office of sheriff, and a *quo warranto* by the coroner will not lie to oust the sheriff under a claim of forfeiture of office, under such statute, under the *quo warranto* statute §§1145, 1146 Burns 1901. Monks, C. J., and Dowling, J., dissent.

From Sullivan Circuit Court; *O. B. Harris*, Judge.

*Quo warranto* by the State, on the relation of William P. Maxwell, against John S. Dudley. From a judgment for defendant, plaintiff appeals. *Affirmed.*

*C. W. Miller*, Attorney-General, *J. T. Hays* and *W. H. Hays*, for appellant.

*J. S. Bays*, *C. D. Hunt*, *W. T. Douthitt* and *L. F. Bays*, for appellee.

Hadley, J.—This action, being a *quo warranto* information, was brought by appellant as coroner of Sullivan county to oust appellee from the office of sheriff of said county. It is grounded upon the act approved March 6, 1899 (Acts 1899, p. 500), as amended by an act approved March 9, 1901 (Acts 1901, p. 311, §2065e Burns 1901), pertaining to the suppression of mob violence. The case comes here on the action of the circuit court in sustaining appellee's demurrer to the information.

No objection is made to the form of the information, and only such facts will be stated as will exhibit the controlling question of law presented. Maxwell, the relator, during the period and events embraced, was the duly

elected, qualified, and acting coroner of Sullivan county. Dudley, the respondent, was the duly elected, qualified, and acting sheriff of Sullivan county, during the same period. On November 20, 1902, a mob took James Dillard, a prisoner, from the custody of Dudley, and lynched him by hanging until dead. The relator immediately, as coroner of the county, demanded of Dudley that he surrender to him, as coroner, possession of the office of sheriff of said county, which was refused. Within ten days after said lynching the respondent filed with the Governor his verified petition for reinstatement to the office of sheriff, and gave due notice thereof to the prosecuting attorney and Attorney-General. The Governor, after a hearing, denied Dudley's petition, and refused to reinstate him in said office of sheriff. The board of commissioners of said county has not at any time appointed a person as sheriff to fill said vacancy, and to succeed the respondent in the office of sheriff, and no one has been elected thereto and qualified.

At the very opening of the discussion we are met with the question, does the relator exhibit such an interest in the office of sheriff as entitles him to the extraordinary remedy of *quo warranto?* All the interest he claims is derived from the amendatory act of 1901, *supra,* which is in these words: "Section 5. If any person shall be taken from the hands of a sheriff or his deputy having such person in custody, and shall be lynched, it shall be conclusive evidence of failure on the part of such sheriff to do his duty, and his office shall thereby and thereat immediately be vacated, and the coroner shall immediately succeed to and perform the duties of sheriff until the successor of such sheriff shall have been duly appointed, pursuant to existing law providing for the filling of vacancies in such office, and such sheriff shall not thereafter be eligible to either election or reappointment to the office of sheriff: Provided, however, that such former sheriff may, within

ten days after such lynching occurs, file with the Governor his petition for reinstatement to the office of sheriff, and shall give ten days' notice of the filing of such petition to the prosecuting attorney of the county in which such lynching occurred and also to the Attorney-General. If the Governor upon hearing the evidence and argument, if any presented, shall find that such sheriff has done all in his power to protect the life of such prisoner and performed the duties required of him by existing laws respecting the protection of prisoners, then such Governor may reinstate such sheriff in his office and shall issue to him a certificate of reinstatement, the same to be effective on the day of such order of reinstatement, and the decision of such Governor shall be final."

The relator's only claim of right to *quo warranto* is derived from §§1145, 1146 Burns 1901, which read as follows: "Section 1145. An information may be filed against any person or corporation in the following cases: * * * Second. Whenever any public officer shall have done, or suffered any act which, by the provisions of law, shall work a forfeiture of his office." "Section 1146. The information may be filed by the prosecuting attorney in the circuit court of the proper county, upon his own relation, whenever he shall deem it his duty to do so, or shall be directed by the court or other competent authority, or by any other person on his own relation, whenever he claims an interest in the office, franchise, or corporation which is the subject of the information."

The exercise of a public office affects the whole body of the public, and hence it is that the government assumes to regulate and restrain it, leaving to the individual citizen only the exceptional right to question it when he is able to show that he has an interest in the particular office different in kind from that of the citizens generally. It will be noted from the above statute that when an infor-

mation is brought on private account, the claim of the relator must be in the office itself, not in its duties; and, under the decisions of this court, it is essential to such an information that it contain not simply the statement required in an information filed by the prosecuting attorney, but averments showing the relator's special and particular interest, setting forth all the facts necessary to establish the conclusion of law that he is entitled to the office, or some interest therein. *Reynolds* v. *State, ex rel.,* 61 Ind. 392; *Jones* v. *State, ex rel.,* 112 Ind. 193; *State, ex rel.,* v. *Ireland,* 130 Ind. 77; *State, ex rel.,* v. *Wheatley,* 160 Ind. 183.

It is said in the Ireland case, at page 78: "One of the facts, to be plainly stated in the information, is the nature of the interest claimed by the relator in the franchise or corporation." This leads us to inquire, does the relator show in his complaint any interest at all in the office of sheriff of Sullivan county? He alleges that on November 20, 1902, a mob took James Dillard, a prisoner, from the custody of the defendant, who was then and there the duly elected, qualified, and acting sheriff of Sullivan county, and hanged him; that the relator immediately after said hanging demanded of the defendant that he surrender to him, as coroner of said county, possession of the office of sheriff of said county, and the books, papers, and all appurtenances thereof; that ever since the said 20th day of November the defendant has unlawfully and wrongfully usurped the office of sheriff of said county, and kept the relator therefrom, and still excludes him from said office, and deprives him of the fees and emoluments thereof, and kept him from performing the duties thereof, contrary, etc. The complaint clearly counts upon an interest in the office of sheriff—that is, in the official franchise, acquired solely through the action of the mob in lynching appellee's prisoner. Assuming the view most favorable to the relator that the statute of 1901 permits us to take, it must be said

Weir v. State, ex rel.

that the enactment has not attempted to cast upon the coroner the office of sheriff in such a case, but has merely attempted to provide that the coroner shall perform *pro tempore,* until a successor to the sheriff is appointed, the ordinary duties of the sheriff—perform them, not as acting sheriff, but as coroner. The relator, therefore, can not recover, because the *quo warranto* statute was only intended to give a remedy, where a person other than the prosecuting attorney is the relator, in cases where such person has an interest in the office itself. The statute does not extend to a case where the claim is that such relator has merely an interest in duties that pertain to the office.

The constitutionality of the amendatory act of 1901, *supra,* has been called in question and ably discussed, but the conclusion we have reached above makes it unnecessary for us to consider it.

Judgment affirmed.

Monks, C. J., and Dowling, J., dissent.