---

*In re* COY.

(*Circuit Court, D. Indiana.* July 16, 1887.)

1. ELECTIONS—INSPECTORS—CUSTODY OF PAPERS—CRIMINAL OFFENSE.
    The statutes of Indiana relating to an election at which a representative in congress is voted for, (Rev. St. 1881, c. 56,) impose upon an inspector who receives the certificate, tally-sheet, and poll-list of such an election the "duty" of safely keeping them in his own custody until they are delivered or returned to the board of canvassers; and the violation of such duty being an offense against the general government, within Rev. St. U. S. § 5515, any one who conspires with others to bring about such violation, or procures it himself, is guilty of offenses against the United States, under Rev. St. U. S. §§ 5440, 5511, for which he is amenable to the jurisdiction of the district court.

2. SAME—INDICTMENT.
    It being the duty of an inspector of a general election in Indiana, at which a member of congress is voted for, not to part with the certificate deposited with him for safe-keeping until he delivers or returns it to the board of canvassers, the offense denounced by Rev. St. U. S. § 5515, is completed, so far as the United States is concerned, as soon as he parts with such certificate to a person not entitled to receive it; and an indictment under Rev. St. U. S. § 5511, need not set out the precise nature of the alterations made in such certificate by such person, nor aver that they were designed to affect, or did in fact affect, the result of the election for representative in congress.

3. SAME—POWERS OF CONGRESS—OFFENSES—STATE OFFICIALS.
    Under Const. U. S. art. 1, § 4, investing congress with power to make regulations as to the time and manner of holding elections for representatives in congress, or to alter such regulations as the state may prescribe, it is competent for congress to require that state officers of elections at which such representatives are voted for shall perform the duties imposed by the state in regard to such elections, and to declare a failure to do so an offense against the United States.

4. STATUTES—CONSTRUCTION OF PENAL STATUTE—INTENTION OF LAW-MAKERS.
    In giving effect to the rule that penal statutes must be strictly construed, the court must not disregard the kindred rule that the intention of the law-maker, to be gathered from the words employed, governs in the construction of all statutes.

On Petition for *Habeas Corpus.*

HARLAN, Justice.    The petitioner, Coy, is in custody under process based upon two indictments in the district court of the United States for the district of Indiana.    He claims that that with which he is charged, if crimes at all, are crimes against the state, and not against the United States; consequently, that the district court is without jurisdiction to proceed against him.    If this contention be sound, the prisoner is enti-

tled to be discharged, (*Ex parte Lange*, 18 Wall. 163; *Ex parte Rowland*, 104 U. S. 604; *Ex parte Fisk*, 113 U. S. 718, 5 Sup. Ct. Rep. 724;) otherwise he must be remanded to the custody of the proper officer to be tried for the offenses charged.

One of the indictments is under section 5440, Rev. St., which provides that "if two or more persons conspire either to commit any offense against the United States, or to defraud the United States in any manner or for any purpose, and one or more of such parties do any act to effect the object of the conspiracy, all the parties to such conspiracy shall be liable to a penalty of not more than ten thousand dollars, or to imprisonment for not more than two years, or to both fine and imprisonment, in the discretion of the court." 21 St. 4; Rev. St. Supp. 484. The first count of that indictment charges that Samuel E. Perkins, Simeon Coy, Henry Spaan, John H. Councilman, Charles N. Metcalf, John E. Sullivan, Albert T. Beck, George W. Budd, Stephen Mattler, William F. A. Bernhamer, and John L. Reardon did "conspire, confederate, and agree together, between and among themselves, to commit an offense against the United States, and did then and there, unlawfully, knowingly, and feloniously, then and there conspire, combine, confederate, and agree together, between and among themselves, to induce, aid, counsel, procure, and advise one Allen Hisey to unlawfully neglect and omit to perform a duty required and imposed by the laws of the state of Indiana relating to and affecting a certain election had and held at and in the county of Marion, in the state and district of Indiana, and at the Second precinct of the Thirteenth ward of the city of Indianapolis, in the county of Marion aforesaid, on the second day of November, A. D. 1886, pursuant to law, at which election a representative in congress for the Seventh congressional district of Indiana was voted for, to-wit: To unlawfully neglect and omit to safely keep in his possession and custody the tally papers, poll-lists, and certificates of said election at said precinct; he, the said Allen Hisey, being then and there an officer of said election, to-wit, an inspector of said election at the Second precinct of the Thirteenth ward of the city of Indianapolis aforesaid, having been thereto duly appointed, and having duly qualified under the laws of the state of Indiana, and acting as such inspector; and that, to effect the object of said conspiracy, the said Samuel E. Perkins then and there, after one of the tally papers and one of the poll-lists of said election at said precinct, and the certificate of the number of votes each person had received at said election at said precinct, designating the office, signed by the board of judges of said election at said precinct, had been deposited with him, the said Allen Hisey, as inspector as aforesaid, and that after he, the said Allen Hisey, had received the said tally paper, poll-list, and certificate aforesaid, for the purpose of returning the same to the board of canvassers of said election for the county of Marion aforesaid, he, the said Samuel E. Perkins, did then and there, by unlawfully and feloniously counseling and advising him, the said Allen Hisey, so to do, and by other unlawful means, to the grand jurors aforesaid unknown, unlawfully used to effect the same unlawful purpose, unlawfully induced

and procured him, the said Allen Hisey, to unlawfully omit and neglect to safely keep said tally paper, poll-list, and certificate in the possession and custody of him, the said Allen Hisey, as inspector as aforesaid, and by said unlawful means induced and procured said Allen Hisey, as. inspector as aforesaid, to surrender and deliver to and into the possession of the said Samuel E. Perkins, and permit him, the said Samuel E. Perkins, to take and have the possession and custody of said tally paper, poll-list, and certificate, and the said tally paper to then and there unlawfully mutilate, alter, forge, and change, before the said tally paper, poll-list, and certificate had been returned to and canvassed and estimated by the board of canvassers of the said election of the county of Marion aforesaid, he, the said Samuel E. Perkins, not being then and there an officer of said election, and not then and there being a person authorized by the laws of the state of Indiana to have possession and custody of said tally paper, poll-list, and certificate aforesaid,—contrary to the form of the statute of the United States, and against the peace and dignity of the United States of America." The second count charges the defendants with having committed a like offense in respect to the same election in the Second precinct of the Twenty-third ward of Indianapolis; and the third count charges them with having committed a like offense in respect to the election in the Second precinct of the Tenth ward.                                                                            •

The other indictment is against Coy alone. It charges him with having unlawfully and feloniously advised, induced, and procured the inspector at said election in the Third precinct of the Thirteenth ward—with whom was deposited the poll-list, tally paper, and certificate of the election—to neglect and omit the performance of the duty, imposed by law, of safely keeping said documents in his possession until delivered to the board of canvassers, and to surrender them to Perkins, by whom they were altered and mutilated.

Under what circumstances is the failure, neglect, or refusal of an officer of an election, at which a representative in congress is voted for, to perform a duty imposed upon him, as such officer, by the law of the state, an offense against the United States?

By section 5511, Rev. St. U. S., it is provided that "if, at any election, for representative or delegate in congress, any person * * * interferes in any manner with any officer of such election in the discharge of his duties; or by any such means, or other unlawful means, induces any officer of an election, or officer whose duty it is to ascertain, announce, or declare the result of any such election, or give or make any certificate, document, or evidence in relation thereto, to violate or refuse to comply with his duty or any law regulating the same; * * * or aids, counsels, procures, or advises any such * * * officer to do any act hereby made a crime, or omit to do any duty the omission of which is hereby made a crime, or attempt to do so,—he shall be punished," etc.

That the persons mentioned in the various counts of the indictment for conspiracy as inspectors of election were lawfully in the discharge of the functions appertaining to that position is conceded in argument, and

is aptly alleged in the indictment. It is also conceded, and, if it were not, it is clear, from the statutes of the state, to be hereafter examined, that they were under a duty to give or make a certificate, document, or evidence in relation to the election in their respective precincts. Each inspector, at such election, who violated or refused to comply with his duty, or any law regulating the same, as well as every one who aided, counseled, procured, or advised him to violate, refuse, or omit to perform his duty, were, according to the express words of this section, guilty of a crime. It is equally clear, in the other case, that the petitioner, Coy, committed a crime, if he aided, counseled, procured, or advised an inspector, at such election, to violate or to refuse or omit to comply with his duty or any law regulating the same.

By section 5515 it is provided: "Every officer of an election at which any representative or delegate in congress is voted for, whether such officer of election be appointed or created by or under any law or authority of the United States, or by or under any state, territorial, district, or municipal law or authority, who neglects or refuses to perform any duty in regard to such election required of him by any law of the United States, or of any state or territory thereof; or who violates any duty so imposed; or who knowingly does any acts thereby unauthorized, with intent to affect any such election or the result thereof;  *  *  *  shall be punished as prescribed in section 5511." Rev. St. Supp. 142.

Observe, "intent" is not made an element in determining the existence of the offenses specified in that section, except in those cases where the offender knowingly does an act "unauthorized" by the law of the United States, or by the law of the state or territory under whose sanction he exercises the functions of an officer of election. His neglect or refusal to perform a *duty* required by law in regard to an election, *at which a representative in congress is voted for*, is made by this section an offense against the United States, although such non-performance of duty is without an evil intent; while the doing of an act simply "unauthorized" by law is not punishable unless done with an intent to affect the election or the result thereof. Whether that distinction is justified by sound public policy was for the law-making department of the government to determine. It was well said by the court—commenting on section 5515—in *U. S.* v. *Jackson*, 25 Fed. Rep. 550:

"Congress seeks by this statute to guard the election of members of congress against any possible unfairness, by compelling, under its pains and penalties, every one concerned in holding the election to a strict and scrupulous observance of every duty devolved upon him while so engaged.  *  *  *  The evil intent consists in disobedience to the law. The legislature has the power to adjudge, and does adjudge, that the doing of the thing is not for the public good; and whether its judgment be wise or unwise, it is always binding on the citizen, and the doing of it is a crime. This is particularly so with reference to that class of statutes imposing duties on public officials in the exercise of their public functions. The command of the legislative will must be obeyed, and disobedience is a crime, and may be punished as such."

I proceed to inquire whether the alleged surrender of the certificate, tally paper, and poll-list was a violation of any *duty* imposed

upon the inspector as an officer of the election at which a representative
in ·congress was voted for. . If it was, it follows, in view of the plain
words of the statute, that he committed an offense against the United
States; consequently, those who conspired to induce or procure, and any
one who advised, counseled, induced, or procured, him to neglect or vio-
late his duty, by surrendering the election papers to Perkins, also com-
mitted an offense against the United States.

The duties imposed by the laws of the state upon inspectors at an
election, at which a representative in congress is voted for, are set forth
in chapter 56 of the Revised Statutes of the state of 1881.

Township trustees, by virtue of their office, are inspectors of election
in the precincts in which they reside. Prior to the opening of the polls,
they appoint two judges, of different political parties, who, with the in-
spector, constitute a board of election. Rev. St. Ind. § 4688. The
judges and the inspector, before the election is opened, are required to
take an oath to support the constitution of the United States and of the
state, and to faithfully and impartially discharge the duties assigned by
law. Id. § 4692. The inspector is the chairman of the board of elec-
tion. Id. § 4695. . When the polls are closed, it is made the duty of
himself and the election judges to open the ballot-box, and count the
votes,—the ballots to be taken out, one by one, by the inspector, "who
shall open them as he takes them out, and read aloud the name of each
person printed or written thereon, and the office for which every such
person is voted. He shall then hand the ballot to one of the judges, who
shall examine the same, and hand it to the other judge, who shall string
it on a thread of twine." Id. § 4710. No person can be admitted to
the room where the counting is done, except the members of the board
of election, the sworn clerks, and two voters from each political party
having candidates to be voted for. Id. § 4711.

Other sections of the Statutes of Indiana are as follows:

"Sec. 4712. When the votes shall be counted, the board of judges shall make
out a certificate, under their hands, stating the number of votes each person
has received, and designating the office, which number shall be written in
words; and such certificate, together with one of the lists of voters and one of
the tally papers, shall be deposited with the inspector, or with one of the judges
selected by the board of judges.

"Sec. 4713. As soon as the votes are counted, and before the certificate of
the judges, as prescribed in the foregoing section, is made out, the ballots,
with one of the lists of voters and one of the tally papers, shall, in the pres-
ence of the judges and clerks, be carefully and securely placed by the inspector,
in the presence of the judges, in a ·strong and stout paper envelope or bag,
which shall then be tightly closed and well sealed with wax by the inspector,
and shall be delivered by such inspector to the county clerk at the very earli-
est possible period before or on the Thursday next succeeding said election;
and the inspector shall securely keep said envelope containing the ballots and
papers therein, and permit no one to open said envelope, or touch or tamper
with said ballots or papers therein. And upon the delivery of such envelope
to the clerk, said inspector shall take and subscribe an oath, before said clerk,
that he has securely kept said envelope, and the ballots and papers therein,
and that, after said envelope had been closed and sealed by him in the pres-
ence of the judges and clerks, he had not suffered or permitted any person to

break the seal or open said envelope, or touch or tamper with said ballot or papers, and that no person has broken such seal or opened said envelope to his knowledge; which oath shall be filed in said clerk's office with the other election papers.

"Sec. 4714. The clerk shall securely keep said envelope, so sealed, with the ballots and papers therein, in the same condition as it was received by him from the inspector, in his office, (unless opened by said inspector, in the presence of the board of canvassers, as herein provided,) for the period of six months. But, when such election is contested, he shall preserve them so long as such contest is undetermined, subject to the order of the court trying such contest. * * *

"Sec. 4715. The inspectors of each township or precinct, or the judges of election to whom the certificates, poll-books, and tally papers shall have been delivered, as provided for in this act, shall constitute a board of canvassers, who shall canvass and estimate the certificates, poll-lists, and tally papers returned by each member of said board; for which purpose they shall assemble at the court-house, on the Thursday next succeeding such election, between the hours of 10 A. M. and 6 o'clock P. M.

"Sec. 4716. The members of such board who shall assemble at such time and place shall select one of their number as chairman, and the clerk of the circuit court shall act as their clerk.

"Sec. 4717. Such board, when organized, shall carefully compare and examine the papers intrusted to it, and aggregate and tabulate from them the vote of the county; a statement of which shall be drawn up by the clerk, and shall contain the names of the persons voted for, the office, the number of votes given in each township and precinct to each person, the number of votes given to each in the county, and also the aggregate number of votes given, which statement shall be signed by each member of said board; which canvass sheet, together with such certificates, poll-books, and tally papers, shall be delivered to the clerk, and by him filed in his office. The same shall be preserved by him, open to the inspection of any legal voter of the county or district or state."

These statutes have been referred to at large, in order to show the great care taken by the state to guard the ballot against fraud, to secure a correct canvass of the votes cast, and an honest declaration of the result. It appears that the laws of Indiana contain special provisions for the custody of two sets of papers, relating to general elections: (1) The ballots, one of the lists of voters, and one of the tally papers, sealed up, in a paper envelope or bag, must be delivered by the inspector into the custody of the county clerk. (2) The certificate prepared by the board of judges, showing the number of votes each candidate received, and designating the office, together with one of the lists of voters and one of the tally papers, must be "deposited with the inspector," and be returned by him to the board of canvassers, who meet on the Thursday succeeding the election for the purpose of canvassing and estimating "the certificates, poll-lists, and tally papers." To the latter papers the present indictments refer. They are the papers which, it is charged, were "deposited" with the inspector by the board of election, and, after being surrendered to Perkins, were forged, altered, and mutilated.

It will be observed that the local statute does not, in express terms, require the inspector to keep those papers in his actual manual custody, during the whole period intervening after they are "deposited" with him,

and before he returns them to the board of canvassers. It is therefore contended that the surrender of them to Perkins was not a violation of any *duty* imposed upon the inspector, and could not be deemed a crime, unless done with the intent to affect in some way the result of the election for representative in congress; and that, as it is not charged in the indictment that the alleged surrender of the election papers was with such intent, or that the alleged forgeries and alterations in fact affected the result of the election for representative in congress, it does not appear that any offense against the United States was committed.

In support of these positions, counsel for the prisoner invoke the familiar rule that penal statutes are to be construed strictly; that is, for the benefit of him against whom the penalty is inflicted. Dwar. St. 634. It is doubtful whether that rule has any application in the present case; for the statutes of Indiana, to which we have referred, merely regulate the conduct of general elections in that state, and define the duties of the officers of such elections. Let it, however, be conceded, for the purposes of this case, that, in determining whether the prisoner has committed a crime, the statutes of Indiana and the statutes of the United States relating to the election of representatives in congress, taken as a whole, should be interpreted as penal statutes, strictly, and not as remedial enactments, to be liberally construed in order to suppress the frauds and public wrongs against which they are directed. *Taylor v. U. S.*, 3 How. 210; *U. S. v. Hartwell*, 6 Wall. 385. Still, the inquiry remains as to the intent with which the legislative department enacted these laws. In giving effect to the rule that penal statutes must be strictly construed, the court must not disregard the kindred rule, that the intention of the law-maker, to be gathered from the words employed, governs in the construction of all statutes. It was said by the supreme court of the United States, speaking by Chief Justice Marshall, in *U. S. v. Wiltberger*, 5 Wheat. 76, 95, that, "though penal laws are to be construed strictly, they are not to be construed so strictly as to defeat the obvious intention of the legislature. The maxim is not to be so applied as to narrow the words of the statute to the exclusion of cases which those words in their ordinary acceptation, or in that sense in which the legislature had obviously used them, would comprehend." So, in *U. S. v. Morris*, 14 Pet. 464, 475, Chief Justice Taney, speaking for the court, said: "In expounding a penal statute, the court certainly will not extend it beyond the plain meaning of its words; for it has been long and well settled that such statutes must be construed strictly. Yet the evident intention of the legislature ought not to be defeated by a forced and overstrict construction." See, also, *American Fur Co. v. U. S.*, 2 Pet. 358, 367.

Giving to the prisoner the full benefit of the rule of interpretation invoked in his behalf,—leaning to the side of mercy where the liberty of the citizen is involved,—I entertain no doubt that the statutes of Indiana, fairly construed, impose upon an inspector who receives the certificate, tally-sheet, and poll-list of a general election, the duty of safely keeping them in his own custody until they are delivered or returned to the board

of canvassers. The requirement that they shall be "deposited" with him, and that the board of canvassers, of which he is *ex officio* a member, shall "canvass and estimate the certificates, poll-lists, and tally papers *returned by each member of said board*," is inconsistent with the idea that he may, prior to the assembling of the board of canvassers, voluntarily surrender these important papers into the hands of others. I say important papers, because, upon examining the statutes and the decisions of the supreme court of Indiana, it will be found that although, in contested election cases, the ballots, lists of voters, and tally papers, sealed up and delivered to the county clerk, are primary and conclusive evidence of the result of the election, (*Reynolds* v. *State*, 61 Ind. 392, 422, *et seq.*,) the papers "deposited" with the inspector constitute the basis upon which rests the official declaration, in the first instance, of the result of all elections in the state. *Moore* v. *Kessler*, 59 Ind. 152. The election of members of the state legislature, governor, representatives in congress, and electors for president and vice-president all rest upon the papers so deposited with inspectors. Rev. St. Ind. §§ 4717, 4718, 4721, 4723, 4724, 4726–4729. It is inconceivable that any inspector could suppose it to be consistent with his duty to part with these papers in advance of his meeting his colleagues of the board of canvassers. They are deposited with him as an officer of the law, acting under the sanction of an oath. The word "deposited" implies that the depositary must safely keep these papers in his own custody until he surrenders them to the board whose duty it is to canvass the returns, and certify the result of the election. While he may not be responsible for their absolute safety, in every case, he is under a solemn duty to guard them with diligence, proportioned· to their value, and to the danger that might come to the public from their loss or mutilation. He holds them in trust for the public; and his duty to retain them in his own exclusive custody is quite as clearly defined as if the statute had so declared in express words. If he voluntarily parts with them before they are returned to the board of canvassers, they are no longer "deposited" with him. Any other construction would defeat the obvious intention of the legislature, and shock the common sense of every one interpreting these statutory provisions in the light of the ordinary meaning of the words used.

It is said that the inspector would not violate his duty by depositing these papers, after they were received by him, in some bank for safekeeping; consequently, it is contended, he need not always have them in his actual manual custody. This might depend upon the mode of the deposit. If they were placed in a box in the bank vault, and he alone had access to that box, they might, in such a case, be regarded as in his actual custody. Other cases might be supposed in which his duty to hold the papers might not be violated by the particular mode adopted for their preservation. But no case of doubtful character is now before us. The specific charge in the indictment is that the inspector unlawfully surrendered the papers to Perkins, who had no right, under the law, to their custody, and that he was induced to do so by Coy in one case, and in the other case by Coy and his confederates.

It was also said, in argument, that the indictments do not state that the crimes charged were committed in relation to or at an election for representative in congress. Counsel overlook the fact that in one case the accused are charged with a conspiracy to procure and induce, and in the other case that Coy procured and induced, the inspector to unlawfully neglect and omit to perform a duty required by the laws of the state "relating to and affecting a certain election *had and held* * * * on the second day of November, 1886, *pursuant to law, at which election* a representative in congress for the Seventh congressional district of Indiana was voted for," etc. I know judicially that such an election was authorized by law to be held; and I must take judicial knowledge, of what every one knows, that such an election was, in fact, held at the time and place specified in the indictment. The general averment that the election was held on the day fixed by statute, and "pursuant to law," is sufficient to show that it was one at which a representative in congress could be legally voted for.

But it is earnestly insisted that the certificate made by the board of election, showing the number of votes received by each person, and "designating the office," is to be deemed a separate document in respect to each candidate voted for,—or, at least that it was one document so far as it related to candidates for state offices, and a different document or paper so far as it related to the election held for representative in congress; and that, in the absence of a specific averment in the indictment showing the surrender of the documents in question to Perkins to have been procured in one case by the prisoner, and in the other case by him and his co-defendants, with direct reference to the vote for representative in congress, the district court must be held to be without jurisdiction to proceed; in other words, that the mere surrender, by the inspector to Perkins, of the certificate and other documents deposited with him,—nothing else appearing,—is not, and could not legally be made, an offense against the United States.

In these views I do not concur. It was conceded in argument, and it may be inferred from the statutes, that the certificate in question was, in fact, one paper, in that it stated the result of the election as to each candidate. So, also, as to the copy of the tally paper and poll-list placed in the hands of the inspector. They were none the less documents in regard to an election for representative in congress because they also showed the number of votes cast at the same polls for state officers. And we have seen that the inspector was under a duty, imposed by law, to keep them in his custody until returned to the board of canvassers; and that, by Rev. St. U. S., the inspector, at an election at which a representative in congress is voted for, is guilty of a crime against the United States if he neglects or refuses to perform, or violates, *any duty* imposed upon or required of him, "in regard to such election," by any law of the United States, or of the state in which such election is held. It is not difficult to understand the reasons which induced the state to require the certificate, and one copy each of the poll-list and tally paper, to be deposited with and safely kept by the inspector until returned by him to the board of can-

vassers. If mutilated or changed before they reached that board, their value as legal evidence in regard to the election both for state and national officers might be impaired or destroyed. If skillfully altered by bad men, the will of the people, as expressed at the polls, might be defeated. Common prudence, therefore, suggested the necessity of guarding against every possibility of such mutilation or alteration. To that end, these papers were required to be "deposited" with the inspector as soon as the vote was counted by the judges of the election. In holding them, prior to their being returned to the board of canvassers, that officer represented both the state and the United States. The national and state governments were alike interested in the faithful discharge of his duty as a public depositary. The documents intrusted to him in that capacity may be said to have been the joint property of the two governments. To part with them was a violation of his duty to the state, and therefore a crime against the United States, because they related to an election for representative in congress, and because his neglect or refusal to perform, or his violation of, a duty imposed upon him by law, "in regard to such election," is made, by the express words of the act of congress, an offense against the United States, punishable by fine or imprisonment, or both. In order to obtain an honest canvass of the votes cast at an election for representative in congress, that which the state makes the inspector's duty to her, in respect to documents relating to the election, is made, by the act of congress, a duty to the United States. It is, consequently, not necessary to set out in the indictment the precise nature of the alterations made by Perkins, nor aver that they were designed to affect, or in fact affected, the result of the election for representative in congress. As the papers in question related to the election for representative in congress,—although containing evidence as to the election for state officers,—the mere surrender of them to Perkins by the inspector, in violation of the duty imposed upon him by law, constituted an offense against the United States, without reference to the nature of the alleged alterations or forgeries. The offense of the inspector was complete the moment he surrendered the papers to Perkins; and, when the latter received them, the offense of the prisoner in the one case, and the offense of the prisoner and his co-conspirators in the other case, were also complete.

The authority of congress to enact the statutes to which reference has been made, is no longer an open question in the courts of the Union. Such legislation is authorized by that provision of the constitution which invests congress with power to make regulations as to the time and manner of holding elections for representatives in congress, or to alter such regulations as the state prescribes. Article 1, § 4. The requirement that officers of elections, at which such representatives are voted for, shall perform the duties imposed by the state in regard to such elections, is the same, in legal effect, as if congress had, in the first instance, and by direct legislation, imposed those duties upon those officers. It would be extraordinary indeed if the nation could not prescribe penalties for the non-performance of duties, in regard to elections for repre-

sentatives in congress, by those exercising the functions of officers at such elections.    It is immaterial that such officers are appointed by the state. When supervising elections for representatives in congress, they can be reached by the power of the United States, and punished for neglect of the duties they assume to discharge.    These views are sustained by the elaborate judgments of the supreme court of the United States in *Ex parte Siebold*, 100 U. S. 375; *Ex parte Clarke*, Id. 399; and *Ex parte Yarbrough*, 110 U. S. 651, 4 Sup. Ct. Rep. 152,—in which the power of congress, either by direct legislation, or by adopting the regulations established by the state, to secure the integrity and freedom of elections, at which representatives in congress are chosen, is placed upon grounds that cannot be shaken.    Those cases cover the whole field of argument.

I am of opinion that the district court of the United States has jurisdiction to proceed under these indictments.    The application for the discharge of the prisoner must therefore be denied.    It is so ordered.