STATE OF INDIANA, EX REL. HOLMES *v.* SLACK ET AL.

[No. 25,584.    Filed July 20, 1928.]

*Schuyler A. Haas, Thomas C. Whallon* and *Louis B. Ewbank,* for appellant.

*John W. Holtzman, Edward H. Knight* and *Miller, Dailey & Thompson,* for appellees.

TRAVIS, J.—Upon a *quo warranto* information (Civil Code 1881, §§814, 815, 817. §§1208, 1209, 1212 Burns 1926), relator Holmes seeks to oust defendant Slack from the office of mayor of the city of Indianapolis, and to invest relator with the office. By the same information, relator seeks to test the right of defendant Hogue, who claims to be the rightful holder of the office of mayor, by right of succession, upon the death of former mayor, Samuel Lewis Shank, although he had not at any time had actual possession of the office, or been in the discharge of any of its duties. The information is in two paragraphs. Each of the defendants filed separate demurrers to each of the paragraphs of information for want of facts to state a cause of action. The circuit court sustained each of the demurrers to the information. Relator, standing upon the information, refused to plead further, and judgment was rendered that the relator take nothing by his action, and that the defendants each recover costs.

The allegations, common to both paragraphs of the information, upon which relator Holmes bases his claim to the office, are: Relator Holmes is a native-born citizen of the United States, and a citizen of the State of Indiana, and he has resided continuously for more than forty-five years last past within the corporate limits of the city of Indianapolis. At the primary election for the selection of candidates for the office of mayor and other elective offices of the city of Indianapolis on May 5, 1925, John L. Duvall received the highest number of votes for the office of mayor, and became the candidate for such office on the Republican ticket. The candidate, John L. Duvall, was duly and legally elected to the office of mayor of the city of Indianapolis at the city election held November 3, 1925, and thereafter received from the election commissioners a certificate of election, as is provided by law. He then qualified for the office of mayor and took possession of the office, which was relinquished to him by the former mayor, Samuel Lewis Shank, on January 4, 1926, which was the end of the four-year term of Shank. Shank, while mayor, appointed the defendant Joseph L. Hogue to the office of city comptroller. Hogue served as city comptroller during the term of Shank as mayor. John L. Duvall, as mayor, appointed William C. Buser to the office of city comptroller, and Buser, after having qualified as such officer by taking the oath of office and giving the required bond, took possession of the office at twelve o'clock noon January 4, 1926, upon the voluntary surrender to him of this office by its former incumbent Joseph L. Hogue, and Hogue made no claim to the office of city comptroller until on or about October 15, 1927. On August ——, 1927, Mayor Duvall appointed to the office of city comptroller Claude Johnson, to succeed Buser. Buser thereupon surrendered the office of comptroller to Johnson. Buser has not at any time

since claimed the office of comptroller. Johnson qualified himself as such officer by taking the oath of office and giving the required bond, which was duly approved. Johnson held the office of comptroller until September 23, 1927, when he resigned as such officer, on which said date Mayor Duvall appointed one Maude E. Duvall to the office of city comptroller. Upon receiving the appointment, Maude E. Duvall qualified by taking the oath of office and giving a bond as required by law. While Maude E. Duvall was serving as city comptroller, and at 3:46 p. m. October 27, 1927, Duvall resigned as mayor of the city of Indianapolis. Immediately upon such resignation of Duvall as mayor, Maude E. Duvall took possession of the office and performed the duties of mayor of the city of Indianapolis. As such mayor, and by the authority invested in her, she appointed the relator Holmes to the office of city comptroller. Relator Holmes qualified for the office by taking the oath and giving bond according to law. Thereupon, Maude E. Duvall relinquished her said office as city comptroller to the relator Holmes, and relator entered upon the duties of the office of city comptroller.

On the same day, to wit: October 27, 1927, and at four o'clock p. m. on said day, Maude E. Duvall, mayor of said city of Indianapolis as aforesaid, resigned her office of mayor in writing, and relinquished and turned over the office of mayor to the relator Holmes, who was then the city comptroller. Relator Holmes thereupon immediately entered upon the performance of the duties of the office of mayor of the city of Indianapolis.

Neither Maude E. Duvall nor Ira M. Holmes, relator herein, was elected to the office of mayor at any general or special election. Each of them was appointed only as city comptroller, and each, in succession, became mayor of the city of Indianapolis by virtue of being city

comptroller at the time of the resignation of the mayor previously in office. Relator Holmes continued in possession of the office of mayor and occupied the offices set aside for the use of the mayor in the city hall, from the time of his accession thereto, to wit: four o'clock p. m. October 27, 1927, without interruption until the following day, October 28, 1927.

In the evening of October 27, 1927, the common council of the city of Indianapolis voted to adopt a resolution to the effect that, whereas John L. Duvall, on September 22, 1927, who was at the time the acting *de facto* mayor of Indianapolis, was found guilty by a jury of accepting money and making promises as to his election, and of appointments and acts which he would perform after his election; and whereas he was found guilty of making such promises and of receiving such money in return for support by William H. Armitage and other persons to assist him in being elected mayor, which finding of guilty by a jury disqualified him to hold the office of mayor, whereby a vacancy was created in the office; and whereas Claude Johnson, who had been duly appointed and acting *de facto* comptroller, resigned his office September 23, 1927, and never qualified as mayor of the city before he resigned; and whereas Duvall was wholly incompetent to appoint any comptroller or other city officer after the return of the verdict of the jury in open court; it was resolved that Claude E. Negley is hereby duly elected, chosen and appointed by the common council of the city to act as mayor *pro tempore* (he being a member of the common council of the city), to act and perform the duties of mayor until a permanent mayor should be chosen by the common council; and a day was fixed, to wit: November 8, 1927, at two o'clock p. m., for the special meeting of the common council to appoint a citizen of the city to serve as mayor of the city for the unexpired term of John L. Duvall.

The resolution was adopted, and Claude E. Negley, a member of the common council, was elected mayor *pro tempore.*

It is further alleged by the information that the resolution which declared the office of mayor vacant and the election of Negley as mayor *pro tempore* were the result of a conspiracy between certain members of the common council, as alleged in the first paragraph of the information, and between certain members of the common council and appellee Slack, as averred in the second paragraph of the information, to deprive Duvall of his legal right to the office of mayor, and deprive the citizens of their right to elect a mayor for the city; that, as a result of such conspiracy, the common council of the city met in special session at 2 o'clock p. m. Tuesday, November 8, 1927, pursuant to a notice and call issued by the president of the council. At such meeting of the common council, all members being present, appellee L. Ert Slack received the majority of the votes of all the members-elect of the common council for the office of mayor, to serve the unexpired term of John L. Duvall. Appellee Slack thereupon qualified for the office by taking the oath of office, and entered upon and assumed to discharge the duties of the office of mayor, and now unlawfully holds possession thereof and excludes the relator therefrom.

Relator Holmes was in possession of the office of mayor, and acting as such officer, at the time the common council elected Claude E. Negley, one of their members, as mayor *pro tempore.* October 28, 1927, in furtherance of said conspiracy, the day when he (Negley) took possession of the office of mayor and the books and papers in connection therewith, Negley obtained, in the Marion Superior Court, a temporary restraining order without notice, restraining relator Holmes from interfering with Negley as mayor *pro tempore.* And while

.the restraining order thus restrained relator Holmes from interfering with Negley as such mayor *pro tempore*, Negley, by force of arms, caused the locks to the doors of the City Hall and the doors to the mayor's office to be changed, and thereby excluded relator Holmes from access to his office of mayor, and Negley thereby gained possession of the records, files and papers which pertained to the office of mayor, and held them. While the temporary restraining order was still in effect, and after appellee Slack had taken possession of the office, the Marion Superior Court, before which the suit for injunction was pending, made such temporary restraining order a permanent injunction against relator Holmes from interfering with Claude E. Negley as mayor *pro tempore*.

Concerning appellee Hogue, defendant below, the information alleges that Hogue had not at any time had actual possession of the office of mayor, and that he had not since January 4, 1926, had possession of the office or discharged any of the duties of city comptroller, but that he (Hogue) claims to be the rightful holder of the office of mayor, and that, by reason of his being excluded from such office by his codefendant Slack, he (Hogue) claims that his political rights have been wrongfully and unlawfully taken from him and he claims that he is entitled to the possession of the office of mayor and to the salary and emoluments thereof, and that relator has made Hogue a party defendant in order that he (Hogue) may set up whatever claim he has to the office of mayor, so that the rights of the relator to the office may be determined.

The information avers that an affidavit was filed in the Marion Criminal Court May 17, 1927, which charged John L. Duvall with having violated the Corrupt Practices Act, by directly charging that Duvall offered and promised one William H. Armitage that, if elected mayor,

Armitage might name two persons for members of the board of public works and one person for the office of city engineer, and that the offer and promise so made was for advantage, aid and value of Armitage; and that the offer and promise was so made by Duvall to Armitage for the purpose of inducing and procuring Armitage to vote, aid and work for Duvall in such municipal election; and, as a further consideration for the promise made by Duvall to Armitage, he (Armitage) agreed to and did pay to Duvall $10,000, Armitage being, at the time such promises were made, a qualified elector at such municipal election.

And it is further averred by the information that Duvall's motion to quash the affidavit which so charged the offense committed by him was overruled by the court, to which ruling of the court, Duvall reserved an exception. The cause was thereafter tried to a jury in the Marion Criminal Court, and the jury, on September 22, 1927, returned its verdict, which found Duvall guilty as charged in the affidavit. Thereafter, October 12, 1927, Duvall filed his motion for a new trial, which was overruled by the court, to which ruling he reserved an exception. On the same day the court entered judgment upon the verdict. An appeal from the judgment was immediately taken to the Supreme Court, and Duvall was let to bail pending appeal. This cause is now pending upon appeal in this court.

As a reason for pleading this charge against Duvall and his conviction and appeal from the judgment, the contention is pleaded that, neither the return of the verdict nor the rendition of judgment thereon against Duvall and the granting of the appeal therefrom operated to create a vacancy in the office of mayor, and that Duvall had not, at any time before his election as mayor of the city, committed any public offense against the crim-

inal laws whereby he was made ineligible to take and hold the office of mayor.

The facts alleged in the second paragraph of the information which are not pleaded in the first paragraph, are: That members of the common council of the city and appellee Slack entered into a conspiracy to bring about and cause the election of Slack as mayor of the city, and to deprive Duvall of his legal and political right, and to take from the citizens their right to elect a mayor; and the allegation that the common council, on January 30, 1928, at a special meeting, adopted a resolution to the effect that, whereas the resolution theretofore adopted by the common council October 27, 1927, was adopted by the common council in ignorance of the facts that Duvall had resigned his said office on the same day that the resolution was adopted; and that Maude E. Duvall, the then city comptroller, had qualified as mayor of the city, and, after so qualifying, had appointed Ira M. Holmes, a citizen of the city of Indianapolis, as city comptroller; and that Holmes had qualified as city comptroller; and also that Maude E. Duvall had resigned her office as mayor of the city, and that Holmes had qualified as mayor of the city to succeed Maude E. Duvall; and the common council thereupon resolved that the resolution theretofore adopted October 27, 1927, and all actions taken thereunder be rescinded, and all things done thereunder be declared null and void and held for naught.

Relator Holmes assigns as errors the action of the trial court sustaining the separate demurrers of each of the appellees to each paragraph of relator's information. Relator relies upon two stated propositions of law to reverse the judgment.

Proposition One: "Under §10276 Burns 1926, when the duly elected and qualified mayor of the city of Indianapolis, John L. Duvall, appointed

Maude E. Duvall, as city comptroller, and she qualified and he then resigned his office and she succeeded him as mayor, and in turn appointed plaintiff's relator (appellant) as city comptroller and he qualified, and she then resigned as mayor, relator thereby and thereupon succeeded to the office of and became the mayor of the city of Indianapolis."

Proposition Two is to the effect, as a matter of law, that the judgment of the Marion Criminal Court upon the verdict of guilty as charged in the affidavit based upon violation of the Corrupt Practices Act, "so appealed from, did not, nor did the verdict of the jury on which it was based, operate to annul the appointment by Duvall of Maude E. Duvall as city comptroller, or her acts as mayor in appointing the relator Holmes to the office of city comptroller, upon succeeding to the office of mayor when Duvall resigned."

As to Slack, relator relies upon the infirmities of Slack's election to the office of mayor by the common council. It is of no matter to the court in this proceeding as it has progressed thus far how slender may be the thread by which appellee Slack holds the office; and even further, it is not a subject of inquiry here by what right appellee Slack holds the office, unless it be shown by allegations well pleaded that relator Holmes has a legal right to the office of mayor. Relator Holmes' information is good against demurrer only upon allegations which if true would vest him with the title to the office. *State, ex rel.*, v. *Wheatley* (1903), 160 Ind. 183, 188, 66 N. E. 684; *Relender* v. *State, ex rel.* (1898), 149 Ind. 283, 290, 291, 49 N. E. 30; *McGee* v. *State, ex rel.* (1885), 103 Ind. 444, 446, 3 N. E. 139; *Reynolds* v. *State, ex rel.* (1878), 61 Ind. 392, 403.

Appellant's proposition one is based upon the construction of Acts 1905, ch. 129, §45, as amended Acts

1909 p. 458, §10276 Burns 1926. So much of said §45 as pertains to this action under appellant's proposition one, is as follows:

" . . . In case of a vacancy in the office of mayor, the city comptroller in all cities having such office shall act as mayor; Provided, That such officer, while acting as mayor, shall not perform any duties as comptroller, but shall appoint a suitable person to act as comptroller during such time, . . . In the event of the death, resignation or disability of the city comptroller, the common council shall designate one of its members to act as mayor *pro tempore* until a special meeting of the council, to be held not less than ten days nor more than fifteen days thereafter, at which special meeting, the council shall elect a suitable person to fill out the unexpired term of the mayor," etc.

It is the appellant's contention that the language of §45, as amended, of the act concerning municipal corporations, is so ambiguous and doubtful of the true intent being expressed in the letter of the section, that it will be necessary for the court to apply the rules of statutory construction in order to remove the absurdity which is plain from the letter of the section. By virtue of the judicial construction, appellant claims that, under that part of the section above quoted, upon a vacancy in the office of mayor, the city comptroller assumes and takes and occupies the position as mayor of the city, separated from the office he formerly occupied as city comptroller; and that, having assumed the actual office of mayor, without any infirmity caused by having held the office of city comptroller, he appoints a comptroller as such, and not merely an acting comptroller; from which it must follow that upon a vacancy in the mayor's office previously occupied as such by one who came into the office by virtue of his having been city comptroller, the person so appointed city comptroller by the former city

comptroller, then acting as mayor, succeeds to the office of mayor when it becomes vacant; and this right of succession continues *ad infinitum*, so long as there be in existence an official who has been appointed to perform the duties of city comptroller, even though such appointment be made by one who formerly was city comptroller or acting city comptroller, and was acting as mayor at the time he made such appointment. In answer to this contention by appellant, appellee Slack contends that, upon the resignation of mayor Duvall, Maude E. Duvall, who then held the office of city comptroller, assumed and did fill the vacancy in the office of mayor only as "acting mayor," and that was the limit of her authority under the law as defined by said §45; that her position as "acting mayor" was an incident only to the office of city comptroller; that her status as comptroller was in no way enlarged to include the title and office of mayor; and further, that Maude E. Duvall, as acting mayor, was not authorized by law to appoint a "city comptroller," but that she shall appoint a suitable person to "act as comptroller"; and further, that if she, while comptroller, acting as mayor, resigned, a vacancy in the office of mayor was thereby created, and it was the duty of the common council to designate one of its members to act a mayor *pro tempore*, and thereafter fill the vacancy by appointment of a suitable person as provided by this section of the act. If that portion of the section of the act which relates to the subject here presented be given the interpretation as presented by the appellee, it construes itself and is not subject to judicial construction. The words in §45 "shall act as mayor," "that such officer, while acting as mayor, act as comptroller," are apt expressions and easily understood as words of limitation. It is plain also that that part of the section, to wit: "In the event of the death, resignation or disability of the city comp-

troller, . . . the common council shall designate," etc; refers to a city comptroller who is "acting as mayor," and who is not at the time performing any duties as comptroller. Under such interpretation, §45 clearly names the limitation, which is, that on the death, resignation or disability of the city comptroller "while acting as mayor," there shall then be a vacancy in the office of mayor, which may not be filled by any other municipal officer by right of succession, and that then the common council shall act as that section of the act compels it to do.

It is unnecessary to consider that part of the information which alleges the charge by affidavit that Duvall had committed a crime and that the verdict of guilty of the charge as made was returned against him by a jury, and that his appeal was then pending before this court from the judgment upon the verdict. The question before us may be decided upon other grounds.

It is the opinion of the court that the letter of the section of the statute referred to by appellant, and upon which he bases his contention that the action of the trial court was error, is clear, and it is not subject to judicial construction. The statute, as applied to the information, precludes one who has been appointed "to act as comptroller," by "the city comptroller . . . while acting as mayor," to "act as mayor," "in the event of the death, resignation or disability of the city comptroller." In the situation presented by the information, the character of the vacancy in the office of mayor is absolute, and may not be filled by succession, but such vacancy must be filled by the common council.

Relator had no legal right to succeed to the office of mayor, either as mayor or as acting mayor.

Appellant relator's term of office expired with the resignation of the comptroller who appointed him, for

the reason that, under the law, he could act as comptroller only "during such time" as the comptroller who appointed him acted as mayor. (§10276, *supra*.) This answers appellant's statement of the question to the effect that:

"Really the only question arising upon the demurrer to the complaint is whether or not a comptroller appointed by one who had succeeded to the office of mayor by virtue of being city comptroller when the elected mayor resigned, is entitled to succeed as mayor, in turn, upon the resignation of the one who appointed him."

It is alleged in the information that appellee Hogue pretends to have some claim to the office, and he is made a party to assert such right, if any he has. Such allegation admits a claim of right of appellee Hogue to the office. Inasmuch as appellant relator has no rightful claim to the office, he may not put appellee Hogue upon his defense to assert his title in this proceeding. The action of the trial court sustaining the demurrer of each of the appellees was not error.

Judgment affirmed.

Martin, J., not participating.